UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GSI GROUP INC. and GSI GROUP LTD.,

    Plaintiffs,

v.

GLASS INC. INTERNATIONAL,

    Defendant.
                                                /

Case No. 06-15396

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [4]**

Pending before this Court is Defendant Glass Incorporated International's motion to dismiss, filed on January 26, 2007. Plaintiff GSI Group Incorporated[1] and Plaintiff GSI Group Limited (collectively, "Plaintiffs") filed suit against Defendant alleging breach of contract arising out of Defendant's failure to pay for and take delivery of a laser cutting system that Plaintiffs manufactured and sold to Defendant. Defendant, a California corporation with no business operations in Michigan, argues that this Court lacks personal jurisdiction over it to hear this case under the Constitution's due process clause, and now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).[2]

In opposition of the instant motion, Plaintiffs assert that Defendant's actions of

---

[1] Plaintiffs' Response in this matter uses the legal name GSI Group Corporation, rather than the name GSI Group Incorporated as reflected in the Complaint and Defendant's filings in this case. The discrepancy appears to be irrelevant, however.

[2] Alternatively, Defendant moves to transfer venue to the U.S. District Court for the Central District of California.

negotiating the underlying contract via telephone, fax and email with Plaintiffs' employees located in Michigan meets the due process requirements necessary for this Court to exercise personal jurisdiction over Defendant. For the reasons set forth below, the Court GRANTS Defendant Glass Incorporated International's motion to dismiss.

## I.  FACTS

Plaintiff GSI Group Limited ("GSI-UK") is incorporated in England and sells laser cutting systems. Plaintiff GSI Group Incorporated ("GSI-Michigan") is a Michigan corporation that serves as a U.S.-based sales office and markets these systems to purchasers. (Pls.' Resp. at 5.) Defendant is a California corporation that was interested in purchasing one of Plaintiffs' laser cutting systems. (Def.'s Mot. to Dismiss (hereinafter, "Def.'s Mot.") at 1-2.)

Sometime during the summer of 2005, a broker informed Jerry Londry, who was a former sales representative for Plaintiffs, that Defendant was looking for a laser system of the kind that Plaintiffs produce. Londry then contacted Defendant's president, Albert Lewis, to discuss Defendant's needs, and the contact resulted in GSI-Michigan issuing Defendant a quotation for a specific system. (Pls.' Resp. at 5; Ex. B.) In response, Defendant issued a purchase order for the laser system on September 6, 2005 that contained slightly different payment terms and delivery specifications than those included with Plaintiffs initial quote. (*Id.* at 5.) After the purchase order date, the parties negotiated to resolve the discrepancies between the terms in the quote and purchase order, and Plaintiffs' issued a revised order acknowledgment on September 20, 2005. (Pls.' Resp. at 6; Ex. E.)

On September 21, 2005, Lewis emailed Plaintiffs' sales representative stating that

Defendant wanted to delay its order for an unspecified period of time.  (Pls.' Resp. at 6; Ex. F.)  Apparently, Defendant had some concern that Plaintiffs' laser system would not adequately meet its needs.  In addition to engaging in other discussions designed to resolve this issue over subsequent months, Plaintiffs tested the laser system in early January, although Defendant contends Plaintiffs never provided it with the test results.  (Pls.' Resp. at 6; Def.'s Mot. at 3.)  Finally, on January 23, 2006, Lewis sent Plaintiffs a letter formally canceling the laser system order.  (Pls.' Resp. Ex. G.)  Due to Defendant's refusal to take delivery of the system or send payment, Plaintiffs modified the unit and sold it to another customer.  (Pls.' Resp. at 6.)

## II.  STANDARD OF REVIEW – MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A plaintiff bears the burden of proving that the Court has personal jurisdiction over the defendant, and must state specific facts by affidavit or other means to meet this burden.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  If a court limits its review to the plaintiff's affidavits without allowing additional discovery or holding an evidentiary hearing, the plaintiff need only state a prima facie showing of jurisdiction and such affidavits "are received in a light most favorable to the plaintiff."[3]  (*Id.*)  The court cannot engage in any weighing of contrary facts proffered by the defendant in its affidavits, however, as there would be nothing "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."

---

[3]Neither party claims that relying on the affidavits would be insufficient here, nor does either side argue for further discovery or an evidentiary hearing on this issue.

*Id.* (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

**III. ANALYSIS**

The instant question of personal jurisdiction raises two separate inquiries. First, the Court must consider whether Defendant is subject to personal jurisdiction under the law of the forum state. Here, the applicable law is Michigan's long arm statute, Mich. Comp. Laws § 600.715, which grants limited personal jurisdiction over foreign corporations under certain circumstances. If state law provides for jurisdiction, this Court must then ensure that exercising jurisdiction would not offend Defendant's due process rights under the U.S. Constitution.

    **A. Michigan's Long Arm Statue Confers Jurisdiction Over Defendant**

Among other avenues, Michigan's long arm statute provides jurisdiction over a foreign corporation where the lawsuit at issue arises out of acts that involve "[t]he transaction of *any* business within the state." Mich. Comp. Laws § 600.715(1) (emphasis added). Courts ranging from the Michigan Supreme Court to the Sixth Circuit have recognized the broad sweep of this portion of Michigan's long arm statute, and have come to the conclusion that the statute authorizes personal jurisdiction to the limits of the Constitution's due process clause. *See Sifers v. Horen*, 188 N.W.2d 623, 624 (Mich. 1971); *see also Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (holding that "even the slightest act of business in Michigan [satisfies] the first statutory criterion for personal jurisdiction . . . ."). Therefore, when dealing with a broad long arm statute like Michigan's, the otherwise bifurcated analysis essentially collapses into a question of whether due process principles are satisfied.

**B. Exercising Jurisdiction Would Offend Due Process**

To exercise personal jurisdiction over a defendant, the defendant must have had sufficient minimum contacts with the forum state so that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1944). In determining whether a nonresident defendant has had sufficient contacts to support personal jurisdiction, three criteria apply:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Physical presence in a state is not necessary; it is sufficient if business was conducted through telephone and mail. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). That said, "an individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum." *Id.* at 478.

**1. Defendant did not purposefully avail itself of acting in Michigan**

The Sixth Circuit has noted that the purposeful availment prong of the personal jurisdiction analysis represents the "*sine qua non* for *in personam* jurisdiction." *S. Mach.*, 401 F.2d at 381-82.

Here, Plaintiffs do not dispute Defendant's assertions that it has no business operations in Michigan, no customers or vendors in Michigan, and its representatives never traveled to Michigan in connection with the events surrounding the instant lawsuit.

5

Plaintiffs' asserted contacts between Defendant and Michigan include:

> negotiation of the payment terms of the parties' contract via telephone discussions, U.S. mail and e-mail correspondence with [Plaintiffs'] employees in Michigan, requesting that [Plaintiffs'] sales representative, Londry, travel to [Defendant's] offices in California for purposes of furthering the parties' contract negotiations, and [Defendant's] soliciting the results of tests Plaintiffs performed.

(Pls.' Resp. at 9.) Plaintiffs also point to the fact that the parties contemplated Plaintiffs testing the machine once it was installed in Defendant's plant. (*Id.* at 11.)

In opposition to the motion to dismiss, Plaintiffs cite a number of cases to support their argument that an exercise of personal jurisdiction would comport with due process on the instant facts. In *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998), the Sixth Circuit held that an Ohio federal court had personal jurisdiction over an individual defendant domiciled in California and could hear a breach of contract suit arising out of a contract with the plaintiff, who was an Ohio resident. The parties' original business dealings concerned a corporation that they formed along with other investors in order to distribute a motion picture. When the movie failed to be a success, the defendant purchased the plaintiff's shares of the corporation and executed a surety agreement which obligated the defendant to repay bank loans that the plaintiff had taken out in order to fund his initial purchase of the corporation's shares. During negotiation of the surety agreement, the defendant sent written drafts and other correspondence to the plaintiff in Ohio, and also made phone calls to that state from California. The lawsuit arose when the defendant did not make the loan payments as agreed. *Id.* at 435. The acts of negotiating and executing the contract with an Ohio resident and the fact that the relationship created "a continuing obligation [of the defendant] in Ohio," meant that the

6

purposeful availment test was met on these facts. *Id.* at 436.

Next, Plaintiffs raise *Salom Enterprises, LLC v. TS Trim Industries, Inc.*, 464 F. Supp. 2d 676 (E.D. Mich. 2006) (Lawson, J.), where the court found it had personal jurisdiction over a defendant that first sold manufacturing equipment to the plaintiff, who had operations in Michigan, and subsequently entered into an asset purchase agreement ("APA") with the plaintiff. Although the plaintiff was organized in Texas and was not actually registered to conduct business in Michigan at the time the lawsuit commenced, the court held that the defendant's actions of placing phone calls to the plaintiff's Michigan-based offices, using the services of a consultant located in Michigan, and wiring funds under the APA to the plaintiff's bank in Michigan created sufficient contacts to support personal jurisdiction over the defendant. *Id.* at 679-80, 685.

Finally, Plaintiffs appeal to an unpublished decision of another judge in this district, *Pakideh v. Ahadi*, No. 99-CV-74424-DT, 2000 WL 545896 at *1 (E.D. Mich. April 7, 2000) (Duggan, J.). There, the court concluded that exercising personal jurisdiction would be constitutional in a case involving claims arising out of a stock transfer agreement where the underlying company was a Michigan corporation. By signing that agreement, the defendant "reached out to create a continuing relationship with [the] plaintiff," and thus "purposefully availed himself of this forum." *Id.* at *5. Mere formation of a contract with a Michigan resident would have been insufficient to support personal jurisdiction, but the fact that "the real object of defendant's contacts with Michigan was to have ongoing consequences in Michigan," led to a proper exercise of jurisdiction in that case. *Id.*

In synthesizing these three cases, the common thread between them is the

ongoing nature of the agreement underlying each of the disputes.  To be sure, the fact that the parties conducted negotiations within the forum state prior to signing the agreements provided additional support for holding that personal jurisdiction existed, but the critical component in all three appears to be the true nature of the parties' agreement.  This comports with the Supreme Court's observation in *Burger King* that "we have emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with *future consequences* which themselves are the real object of the business transaction.'"[4]  *Burger King*, 471 U.S. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-17 (1943)) (emphasis added).

For its part, Defendant argues that exercising personal jurisdiction would be unconstitutional on these facts under *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997).  While the Court does not share Defendant' opinion that *Kerry Steel* is "on all fours" with the present case, (Def.'s Reply at 3 n.2) that case is quite close to the instant dispute from a factual perspective.  There, the Sixth Circuit found that a Michigan federal district court did not have personal jurisdiction over an Oklahoma company that placed an order for steel coils with a Michigan-based supplier.  Prior to forming the contract, the parties negotiated over the phone and by fax between Oklahoma and Michigan, and the defendant sent purchase orders to the plaintiff in Michigan.  As in the instant case, the defendant in *Kerry Steel* never sent any

---

[4] At oral argument, Plaintiffs also argued that the result in *Lanier*, 843 F.2d 901, supports an exercise of jurisdiction here, but the Court finds that case distinguishable from the instant facts under the same reasoning just listed.

8

employees to the forum state.  The plaintiff then tendered delivery of the steel to the defendant in Illinois, but the defendant failed to pay the entire price since the steel did not conform to agreed-upon standards, and the plaintiff brought suit in Michigan federal court.  *Id.* at 148.  Noting that forming a contract, placing phone calls, and sending faxes to a forum state were insufficient on their own to constitute purposeful availment, the court focused on the fact that the defendant gave "no reason to believe that [it] intended to establish 'continuing relationships and obligations' in Michigan."  *Id.* at 151 (quoting *Burger King*, 471 U.S. at 473).  Thus, the purposeful availment prong was not met on those facts.

Here, the facts are nearly identical to *Kerry Steel*, with the exception of one potential disparity.  The similarities are that the parties' contract[5] arose out of communications between Defendant in California and Plaintiffs' employees in Michigan, none of Defendant's employees ever traveled to Michigan during negotiations, and the transaction appears to only involve a one-off purchase–not the beginning of an ongoing sales relationship between the parties.  Furthermore, it appears that GSI-UK would ship the laser system directly from its place of manufacture in England to Defendant's facility in California without traveling through Michigan.

The main difference between the facts of this case and those at issue in *Kerry Steel* are the types of goods involved, however.  It is reasonable to expect that a contract for a specialized piece of industrial machinery that will take several days to install and test would involve a greater possibility for an ongoing relationship than the

---

[5] Assuming that they did enter into one, as the Court must view the facts in a light most favorable to Plaintiffs at this stage of the proceedings.

purchase of a commodity such as steel coils.  Although Plaintiffs' quote and Defendant's purchase order do not specify the inclusion of a future service, support or training contract, the likelihood of an additional relationship developing between the instant parties appears much greater than one would expect in a simple sale of standard goods like those at issue in *Kerry Steel*.  Therefore, the instant facts could be read to support an ongoing relationship between the parties that would not have been present in *Kerry Steel*, so this case could plausibly be a candidate for exercising personal jurisdiction.

Whether such ongoing support from Plaintiffs to Defendant is likely under this scenario remains conjectural and hypothetical at this point, however, as nothing in Plaintiffs' quotation to Defendant, nor Defendant's purchase order returned to Plaintiffs, contains any evidence that the parties contemplated any such relationship extending beyond the installation phase.  Plaintiffs' revised quotation with amended payment terms mentions that installation and training are both "NOT INCLUDED," and makes no mention whatsoever of any type of future service or support contracts.  (Pls.' Resp., Ex. E.)  Similarly, Defendant's purchase order only lists technical aspects of the system purchased, and does not reference any sort of additional relationship that is expected to ensue.

Plaintiffs bear the burden of establishing personal jurisdiction by way of affidavits or other factual allegations.  The Court finds that without any indication that the relationship between the parties will continue beyond installation of this particular laser system the case is indeed controlled by the result in *Kerry Steel*, and Plaintiffs have not established that Defendant purposefully availed itself of the benefits of operating in Michigan on these facts.  Thus, the first prong in the personal jurisdiction analysis is not

met here.

### 2. This case does not arise out of the parties' contacts in Michigan

While Plaintiffs' failure to meet the purposeful availment prong of the personal jurisdiction analysis would most likely be fatal to their case on its own, particularly since this factor is the *sine qua non* of personal jurisdiction according to the *Southern Machine* court, it is worth noting that Plaintiffs' case also fails to meet the "arising out of" consideration. The *Kerry Steel* court raised an additional point on this issue that is factually indistinguishable from the instant case. There, the court held that "[a]t its most basic level, the claim arose out of [the defendant's] failure to pay the full purchase price, based on the purported nonconformity of the goods with the specifications of the contract. The refusal to pay occurred in Oklahoma [where the defendant was located]." *Kerry Steel*, 106 F.3d at 152. Here, Plaintiffs' claim arises solely from Defendant's failure to take delivery of the laser system and to pay for it. Both decisions were presumably made at Defendant's facilities in California, meaning that, under the reasoning of *Kerry Steel*, Plaintiffs' claim of personal jurisdiction also fails on this alternative ground.

Finding that Plaintiffs have not met either of the first two prongs of the personal jurisdiction analysis, the Court sees no reason to discuss whether an exercise of personal jurisdiction on these facts would be reasonable.

### C. Motion to Change Venue

Similarly, without personal jurisdiction to hear this case, the Court declines to consider Defendant's alternative argument for a change of venue to the Central District of California.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders that Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED and this case is DISMISSED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 29, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

12